FILED
IN CLERKS OFFICE
US DISTRICT COURT E.D.N.Y.

★ FEB 21 2020 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

**JERRY MCCULLOUGH,**

                Petitioner,

        - against -

**UNITED STATES OF AMERICA,**

                Respondent.

-------------------------------------------------------------- X

**MEMORANDUM DECISION
AND ORDER**

14-CV-01920 (AMD)

**ANN M. DONNELLY,** United States District Judge:

The *pro se* petitioner, Jerry McCullough, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2255(a). On October 20, 2009, a jury convicted the petitioner of conspiracy to commit postal robbery, 18 U.S.C. § 371, postal robbery, 18 U.S.C. § 2114(a), and brandishing a firearm during a crime of violence, 18 U.S.C. § 924(c)(1)(A)(iii). On December 9, 2011, the Honorable Sandra L. Townes sentenced him to 135 months in prison and five years of supervised release. The petitioner's conviction was affirmed on appeal. *United States v. McCullough*, 523 F. App'x 82 (2d Cir. 2013). He was released from prison in July of 2019 but remains on supervised release until 2024.

The petitioner alleges in his *pro se* brief that his trial counsel was ineffective, and that the prosecutor committed misconduct. While the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019) was pending, the Federal Defender Services entered an appearance and challenged the petitioner's conviction of brandishing a firearm during a crime of violence.[1] For the reasons that follow, the petition is denied.

---

[1] The parties submitted supplementary memoranda on September 20, 2019 and November 21, 2019, addressing only the petitioner's conviction under 18 U.S.C. § 924(c). (ECF Nos. 27, 29.)

## BACKGROUND

### I.  Overview[2]

In the early morning hours of June 8, 2007, the petitioner and accomplices robbed the Archer Avenue Post Office in Jamaica, New York.  The petitioner and other robbers held the victims at gunpoint and stole $1,419.85.

The petitioner was arrested in January of 2009 and charged with conspiracy to commit postal robbery, postal robbery, and brandishing a firearm during a crime of violence.  In October of 2009, a jury convicted the petitioner on all three counts.

### II.  Trial

The petitioner, represented by Charles S. Hochbaum, went to trial before Judge Townes and a jury in October of 2009.[3]  (CR ECF No. 84.)  The evidence established the following facts.[4]

The petitioner met Derek Cochran in 1991 when they worked for the New York City Housing Authority.  (CR ECF No. 98 at 163:7-8, 157:21-23.)  Cochran's aunt, Susan McMillan,

---

[2] Because the petitioner was convicted, I summarize the facts in the light most favorable to the verdict. *Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012).

[3] On September 24, 2018, the petitioner moved to expand the record to include the Second Circuit Grievance Committee's decision publicly reprimanding Mr. Hochbaum for failing to file documents in a timely fashion in other cases, failing to respond to the court's directions in 12 appeals, and for lack of candor before two district court judges. (ECF No. 23.) I grant this motion and consider the grievances in determining the petition.

[4] The prosecution called ten witnesses, including three postal employee victims, a postal inspector who investigated the robbery, two Nextel Sprint representatives who testified about cell phone data and historical cell-site records, a hospital administrator who testified, based on medical records, that the petitioner was late for a medical appointment the morning of the robbery, a parole officer who identified one of the petitioner's co-conspirators, the lead New York City Police Department detective who investigated the robbery, and the petitioner's co-conspirator, Derek Cochran.  The prosecution also introduced surveillance video footage of the robbery, cellular telephone records, and historical cell-site records showing where the petitioner and his co-conspirators were the morning of the robbery. (CR ECF Nos. 98 at 89; 99 at 91.) The defense did not present any evidence.

2

worked at the Archer Avenue Post Office in Queens, and told Cochran that "there was money to be taken" at the post office. (CR ECF No. 98 at 171:2-8, 172:1-4.) Cochran asked the petitioner if he wanted to rob the post office. (*Id.* at 173:4-14.) The petitioner said that he was interested; a few weeks later, they visited the post office to look around, and the petitioner asked another man, "Rome," to assist in the robbery. (*Id.* at 174:15-175:4, 176:22-177:7.) McMillan agreed to get them the post office door's combination code. (*Id.* at 177:22-25.)

Cochran, Rome and the petitioner met on Merrick Boulevard early the morning of June 8, 2007. (*Id.* at 177:22-25, 178:13-19.) The petitioner drove the trio to the post office; Cochran unlocked the post office door, and the petitioner and Rome covered their faces, pulled their guns, and forced the employees to the ground.[5] (*Id.* at 178:23-179:2, 181:2-3, 181:20-182:8.) They ordered one employee to take them to a room of safe boxes. (*Id.* at 182:18-183:17.) The petitioner and his accomplices stole $1,419.85,[6] and fled after about ten minutes. (*Id.* at 185:1-18; ECF No. 99 at 35:24-25.)

NYPD Detective Christopher Bollerman of the 103rd Precinct Detective Squad was assigned to investigate the robbery. He arrived at the post office later that day, and collected surveillance video footage of the robbery. (CR ECF No. 98 at 63:3-64:5.) Although the time on the surveillance recording was off by 48 minutes—for example, a video recorded at 6:55 a.m. was marked 6:07 a.m.—the video was complete. (*Id.* at 66:19-25, 71:18-20.)

Cochran was arrested on June 24, 2008 and admitted his role in the robbery. (ECF No. 98 at 113:1-6.) Investigators arrested McMillan and the petitioner on January 28, 2009. (*Id.* at 113:5-17.)

---

[5] Cochran did not have a gun. (*Id.* at 171:1-3.)

[6] They overlooked approximately $60,000 in a nearby metal box. (ECF No. 99 at 36:11-21.)

## III. Verdict and Sentencing

On October 20, 2009, a jury convicted the petitioner of conspiracy to commit robbery, robbery, and unlawful use of a firearm. (CR ECF No. 84.)

On December 9, 2011, Judge Townes sentenced the petitioner to concurrent terms of 51 months' imprisonment for conspiracy to rob a postal office and robbery of a postal office, followed by an 84-month term for unlawful use of a firearm. (CR ECF No. 136.)

## IV. Second Circuit Appeal

The petitioner appealed his conviction, and argued that the court should not have admitted his cell-site records into evidence, and that his lawyer was ineffective because he did not move to suppress the records. *McCullough*, 523 F. App'x at 83. The petitioner also challenged the sufficiency of the evidence. *Id.* at 84.

The Second Circuit affirmed the petitioner's conviction in an April 23, 2013 summary order. *Id.* at 85. The court held that the petitioner waived his claim about the cell-site records, and that the records were in any event admissible because investigators obtained them in reasonable reliance on the Stored Communications Act, 18 U.S.C. § 2703. *Id.* at 83. And because the records were admissible, counsel could not have been ineffective for failing to object to them. *Id.* at 83. Finally, the court concluded that the evidence against the petitioner—which included testimony from three eyewitnesses and a co-conspirator, as well as video evidence— was sufficient to support the conviction. *Id.* at 84.

## DISCUSSION

Section 2255(a) permits a "prisoner in custody under sentence of a court" to "move the court which imposed the sentence to vacate, set aside or correct the sentence" on the "ground that the sentence was imposed in violation of the Constitution or laws of the United States." 28

U.S.C. § 2255(a). The Court "shall vacate and set the judgment aside" if the Court finds that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." *Id.* § 2255(b). The petitioner makes three claims: that his conviction for unlawful use of a firearm during a crime of violence was unlawful because armed postal robbery is not a "crime of violence," that his trial counsel was ineffective in violation of the Sixth Amendment, and that the prosecution violated his right to procedural due process. (ECF Nos. 1, 27.)

## I.  Conviction under 18 U.S.C. § 924(c)

The petitioner challenges his conviction for unlawfully using a firearm in furtherance of a "crime of violence," 18 U.S.C. § 924(c), on the theory that postal robbery, 18 U.S.C. § 2114(a), is not a crime of violence. (ECF No. 27 at 2.) The Government responds that the language of the statute makes it clear that postal robbery is a crime of violence. (ECF No. 29 at 1.)

Section 924(c) defines "crime of violence" as a federal felony that (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense. 18 U.S.C. § 924(c)(3). The Supreme Court has held that subsection (B), the residual clause, is "unconstitutionally vague." *United States v. Davis*, 139 S. Ct. 2319, 2326 (2019). However, an offense is still a "crime of violence" if it satisfies subsection (A), the elements clause. 18 U.S.C. § 924(c)(3)(A).

Courts employ a "categorical approach" to determine whether an offense is a crime of violence. *United States v. Hill*, 890 F.3d 51, 55 (2d Cir. 2018) (collecting cases). "Under the categorical approach, courts identify the minimum criminal conduct necessary for conviction

5

under a particular statute by looking only to the statutory definitions—i.e., the elements—of the offense, and not to the particular underlying facts." *Hylton v. Sessions*, 897 F.3d 57, 60 (2d Cir. 2018) (citations and alterations omitted).

When a statute is "divisible"—when it defines multiple offenses, *United States v. Jones*, 878 F.3d 10, 16 (2d Cir. 2017) (citing *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016))— courts apply a "modified categorical approach," which "permits consideration of certain materials that reveal which of a statute's separate offenses served as the basis for the defendant's conviction." *Harbin v. Sessions*, 860 F.3d 58, 64 (2d Cir. 2017) (citing *Descamps v. United States*, 570 U.S. 254, 257 (2013)). This "limited class" of materials includes the underlying indictment and the trial court's jury instructions. *Descamps*, 570 U.S. at 257.

The petitioner was convicted of violating 18 U.S.C. § 2114(a), which provides as follows:

> **(a) Assault.** A person who assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal, or purloin such mail matter, money, or other property of the United States, or robs or attempts to rob any such person of mail matter, or of any money, or other property of the United States, shall, for the first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery he wounds the person having custody of such mail, money, or other property of the United States, or puts his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned not more than twenty-five years.

18 U.S.C. § 2114(a). Section 2114(a) is a divisible statute that defines two offenses: (1) assault and robbery of government property, punishable by a term of not more than ten years' imprisonment, and (2) assault and robbery of government property where the victim is wounded or his life is put in jeopardy by the use of a dangerous weapon, punishable by a term of not more than twenty-five years' imprisonment. 18 U.S.C. § 2114(a); *see also Mathis*, 136 S. Ct. at 2256

("If statutory alternatives carry different punishments, then . . . they must be elements" of different crimes.) (citations omitted).

The Second Circuit has not addressed whether Section 2441(a) is a crime of violence. However, other circuit courts have ruled that the second offense in Section 2441(a)—when a defendant wounds a victim or puts his life in jeopardy—is a crime of violence under section 924(c)'s elements clause. *See, e.g., Knight v. United States*, 936 F.3d 495, 500-01 (6th Cir. 2019); *United States v. Enoch*, 865 F.3d 575, 582 (7th Cir. 2017); *In re Watt*, 829 F.3d 1287, 1290 (11th Cir. 2016). These courts have emphasized that "the use of a dangerous weapon to put the victim's life in jeopardy transforms" whatever force that may be used in an assault and robbery "into violent physical force." *Knight*, 936 F.3d at 495. The Eleventh Circuit explained that a defendant who enters a post office, instructs a postmaster, at gunpoint, to fill a bag with cash, forces her to lie on the ground and threatens to shoot if she moves, indisputably commits a crime of violence under section 924(c)(3)(A). *See Watt*, 829 F.3d at 1289-90; *see also Enoch*, 865 F.3d at 582 (when "a defendant . . . brandish[es] a gun . . . as to put the life of a victim in jeopardy," he commits "an offense that 'has as an element the use, attempted use, or threatened use of physical force against the person or property of another.'") (citation omitted).

The petitioner was convicted under the second part of section 2441(a)—putting "persons' lives in jeopardy by the use of a dangerous weapon" while robbing the United States Postal Service.[7] (ECF No. 9 ¶ 3.) Judge Townes instructed the jury in accordance with this charge: "in carrying out the robbery, the [d]efendant put in jeopardy by use of a dangerous weapon the life of the person having lawful charge" of United States property. (ECF No. 153 at 86:1-15.) She defined a dangerous weapon as "anything capable of being readily operated, manipulated,

---

[7] Because the petitioner was convicted under the second offense in section 2441(a), I decline to reach the question of whether the first offense in section 2441(a) constitutes a crime of violence.

wielded, or otherwise used by an individual to inflict severe bodily harm or injury upon another person," and explained that "[t]o put a person's life in jeopardy by use of a dangerous weapon means to expose such a person to risk of death by the use of such a dangerous weapon." (*Id.* at 87:18-88:5.) The prosecution charged the petitioner with the second offense in section 2441(a), the court instructed the jury accordingly, and the jury convicted him of that crime—a crime of violence under the elements clause of 18 U.S.C. § 924(c)(3)(A).

Accordingly, the petitioner's challenge to his conviction under 18 U.S.C. § 924(c) is denied.

## II. Ineffective Assistance of Counsel

The "purpose of the Sixth Amendment guarantee of the Assistance of Counsel . . . is to ensure that defendants have effective assistance of counsel." *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005) (internal quotation marks and citations omitted). A petitioner claiming that his lawyer was ineffective must meet the two-pronged test articulated in *Strickland v. Washington*: (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 694 (1984).

Under the first prong, "[a] convicted defendant . . . must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. "Judicial scrutiny of counsel's performance must be highly deferential," and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "[R]elief may be warranted when a decision by counsel cannot be justified as a result of some kind of plausible trial strategy." *Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 385 (1986)).

To satisfy the second prong, the petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "The level of prejudice the defendant need demonstrate lies between prejudice that 'had some conceivable effect' and prejudice that 'more likely than not altered the outcome in the case.'" *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 693). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The petitioner argues that his trial counsel should have investigated whether the indictment was "lawful" and whether there was "lawful jurisdiction." (ECF No. 1 at 4.) The petitioner says that counsel should have obtained a grand jury concurrence form to make that determination. *Id.* There is a "presumption of regularity in grand jury proceedings," and the petitioner does not cite any evidence to overcome that presumption. *United States v. Archuleta*, 02-CR-1060, 2018 WL 8646703, at *7 (S.D.N.Y. July 31, 2018) (collecting cases). Nothing in the record suggests that the government did not comply with Federal Rule of Criminal Procedure 6. *See Kalani v. United States*, No. 02 CIV. 8663, 2002 WL 31453094, at *10 (S.D.N.Y. Oct. 31, 2002) (rejecting petitioner's ineffective assistance of counsel claim because he failed to provide "any specific factual allegations tending to show that the Indictment was returned in violation of the Local Rules in this District and Rule 6(f) . . . "). In fact, the Eastern District had jurisdiction over the petitioner's case; he was charged with and convicted of conspiring to rob a

post office in Queens—which is in the Eastern District of New York—and using a firearm during the course of that robbery. *See* 28 U.S.C. 112(c).[8]

Similarly meritless is the petitioner's claim that his lawyer should have gotten the "Grand Jury Master List" in order to "investigate whether there were grounds to seek dismissal of the indictment [under] the Jury Selection and Service Act of 1968." (ECF No. 1 at 4.) He claims, without citing any evidence, that "there was a systematic exclusion of a disproportionate number of students, African-Americans, women, and people with Spanish surnames from the Grand Jury Master List." (ECF No. 1 at 5.) As explained above, counsel is not required "to investigate every line of defense a defendant suggests." *Jacob v. LaClaire*, No. 13-CV-4688, 2014 WL 522777, at *13 (S.D.N.Y. Feb. 11, 2014) (citing *United States v. Romero*, 91-CR-586, 1993 WL 485677, at *7-8 (S.D.N.Y. Nov. 22, 1993), *aff'd*, 54 F.3d 56 (2d Cir. 1995), *cert. denied*, 517 U.S. 1149 (1996)). While claims of discrimination can support a writ of habeas corpus, the petitioner must present a *prima facie* case of discrimination by showing that "that the procedure employed resulted in substantial underrepresentation of his race or of the identifiable group to which he belongs." *Rose v. Mitchell*, 443 U.S. 545, 564-65 (1986) ("[I]t remains true that to be entitled to habeas relief the present respondents were required to prove discrimination under the standards set out in this Court's cases.").

The petitioner has not identified any evidence of discrimination in the grand jury process; he has not pled statistical underrepresentation, racially-motivated strikes of certain jurors, or offered any facts that give rise to an inference of discrimination. He merely alleges in conclusory fashion the "systematic exclusion" of certain groups of people from the grand jury

---

[8] Technical errors in indictments," if any, "may be cured by the weight of evidence presented at trial, the jury instructions, and the verdict." *Lugo v. United States*, No. 06-CV-5400, 2008 WL 5191684, at *7 (E.D.N.Y. Dec. 11, 2008).

and petit jury. (ECF No. 1 at 5.) Again, "[t]he grand jury proceeding is accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process." *United States v. Mechanik*, 475 U.S. 66, 75 (1986) (citation omitted). The petitioner identifies nothing in the record to suggest any unfairness in either the grand jury or petit jury processes, so his lawyer could not have been deficient for failing to pursue those claims. "Counsel [is] not required to investigate when there was nothing to be gained by such an investigation." *Jacob*, 2014 WL 522777, at *13 (citing *Greiner v. Wells,* 417 F.3d 305, 321 (2d Cir. 2005) ("[A]s a general matter, when there is 'reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.'") (citation omitted), *cert. denied*, 546 U.S. 1184 (2006)).

The petitioner also renews the argument that he made to the Second Circuit—that his lawyer should have moved to suppress the cell-site records. (ECF No. 1 at 6.) The Second Circuit already rejected this claim as unpersuasive, *McCullough*, 523 F. App'x at 83, and "re-litigation of issues already decided on direct appeal" is barred. *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (mandate rule bars ineffective assistance of counsel claims raised and resolved on direct appeal). In any event, the records were admissible, *McCullough*, 523 F. App'x at 83, so counsel could not have been ineffective for failing to challenge their admissibility.

Accordingly, I reject the petitioner's claim of ineffective assistance of counsel.

### III. Prosecutorial Misconduct

A conviction will be set aside when prosecutorial misconduct causes "substantial prejudice" to the petitioner, thereby depriving him of his right to a fair trial. *United States v.*

*Valentine*, 820 F.2d 565, 570 (2d Cir. 1987) (citing *United States v. Clark*, 613 F.2d 391, 405 (2d Cir. 1975), *cert. denied*, 449 U.S. 820 (1980)). The court must first determine whether there was misconduct; if there was, a court must consider (1) the severity of the misconduct, (2) the measures adopted to cure the effects of the misconduct, and (3) the certainty of conviction in its absence. *Id.* The court may also consider whether the misconduct was intentional. *Id.*

"When prosecutorial misconduct claims are raised in the context of a section 2255 petition, the petitioner must also assert 'cause' for failure to raise such arguments on direct appeal." *Deida v. United States*, No. 3:13-CV-1608, 2017 WL 2661622, at *5 (D. Conn. June 20, 2017) (citing *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)). "Cause" can be established by showing that "some objective factor external to the defense impeded" counsel from raising the claim earlier, *Murray v. Carrier*, 477 U.S. 478, 489 (1986), and "actual prejudice resulting from the errors of which he complains," *United States v. Frady*, 456 U.S. 152, 168 (1982).

The petitioner claims that the government concealed exculpatory evidence and impeachment material until the day before trial, which denied him the chance to do a full investigation into the case against him. (ECF No. 1 at 9.) Specifically, he claims that the prosecutors did not tell him about two possible suspects—"Mo" and "Unique"—until the trial. (*Id.*) Under *Brady v. Maryland*, 373 U.S. 83 (1963), "the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment." *United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 91 (2d Cir. 2014) (quoting *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001)). Nevertheless, "a constitutional error occurs . . . only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." *United States v. Bagley*, 473 U.S. 667, 678 (1985).

As a general matter, the petitioner's prosecutorial misconduct claims are procedurally barred because he did not raise them on direct appeal. In any event, they are meritless.

The Government produced evidence in the weeks leading up to trial, including information about "Mo" and "Unique" (CR ECF Nos. 66, 67, 72), and defense counsel used the evidence at trial. He cross-examined the witnesses extensively about "Mo"—a name Cochran used in a proffer session when referring to "Rome" (ECF No. 98 at 208:13-21, 210:2-19)—and "Unique"—a name that the postal inspector received from an informant, (Tr. 98 at 126:8-20). Clearly, then, the defense had the information about which the petitioner complains, and used it. Moreover, the fact that there may have been additional co-conspirators was not exculpatory in the context of this case. Derek Cochran maintained that the petitioner participated in the robbery, as did others, and cell-site records and video footage established that the petitioner was in close contact with Cochran on the morning of the robbery.

The petitioner also challenges the general credibility of two witnesses—Derek Cochran and Detective Bollerman. (ECF No. 1 at 10.) The petitioner says Cochran lied to get the benefit of a plea bargain, and that Detective Bollerman lied about the time discrepancy between the surveillance video and cell-site records. (*Id.*) It was for the jury to determine witness credibility. The jurors listened to the testimony, which included cross-examination, and made their determination.

### CONCLUSION

For the reasons set forth above, the petitioner's motion to vacate, set aside or correct his sentencing pursuant to 28 U.S.C. § 2255(a) is denied in its entirety. A certificate of appealability will not be issued. *See* 28 U.S.C. § 2253(c). The Court certifies pursuant to 28 U.S.C.

§ 1915(a)(3) that any appeal from this Order would not be taken in good faith.  The Clerk of Court is directed to close this case.

**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
      February 21, 2020